UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ROOSEVELT WILLIAMS, JR.                                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:18CV665TSL-RHW

ALLSTATE INSURANCE COMPANY                                 DEFENDANT


MEMORANDUM OPINION AND ORDER

        This cause is before the court on the motion of defendant

Allstate Insurance Company (Allstate) pursuant to Federal Rule of

Civil Procedure 56 for partial summary judgment as to the claims

of plaintiff Roosevelt Williams, Jr. for bad faith and extra-

contractual damages.  Williams has not responded to the motion,

and the time for filing a response has now passed.  The court,

having considered the motion and accompanying memorandum and

attachments, concludes the motion is well-taken and should be

granted.

        In his complaint, Williams alleges that as the result of an

October 3, 2015 automobile accident in which his vehicle was

struck from the rear by an underinsured motorist, he sustained

"severe injuries including but not limited to a cervical disc

fracture and damage to hardware previously installed in [his]

lumbar spine, necessitating surgical intervention to repair said

damage," resulting in medical expenses in excess of $170,000.

Ultimately, the tortfeasor's liability carrier paid its $25,000

limits of liability and Allstate paid an additional $2,000 in

medical payments under Williams' automobile policy. However, in response to Williams' claim for benefits under his policy's underinsured motorist coverage (UIM), Allstate took the position that the $25,000 he had already received adequately compensated him for injuries sustained in the accident. Williams thus has brought the present action against Allstate asserting a claim for breach of contract to recover benefits allegedly due him under his UIM coverage and further demanding extra-contractual and punitive damages for Allstate's alleged bad faith breach of contract. By the present motion, Allstate seeks summary judgment on Williams' claims for extra-contractual and punitive damages.

<u>Summary Judgment Standard</u>

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment on a claim or part of a claim is appropriate "'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" <u>Seacor Holdings, Inc. v. Commonwealth Ins. Co.</u>, 635 F.3d 675, 680 (5th Cir. 2011) (quoting Rule 56(a)). "An issue as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id</u>. (quoting Rule 56(a)).

When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-25, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

In evaluating the record evidence to determine whether a material factual dispute exists, the court must refrain from weighing the evidence or making credibility choices. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Id</u>. The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." <u>Id</u>.

<u>Standard for Recovery of Extra-Contractual/Punitive Damages</u>

3

Under Mississippi law, to recover punitive damages for bad faith in the insurance context, the insured has the burden to prove that the insurer denied or delayed payment of the claim "(1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." United States Fid. & Guar. Co. v. Wigginton, 964 F.2d 487, 492 (5th Cir. 1992). An insurer whose conduct was not sufficiently egregious to justify an award of punitive damages may nonetheless be liable for consequential or extra-contractual damages where it lacked a reasonably arguable basis for its delay or denial decision. Essinger v. Liberty Mut. Fire Ins. Co., 534 F.3d 450, 451 (5th Cir. 2008); Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 628 (5th Cir. 2008) (citing Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1186 n.13 (Miss. 1990)). Thus, in general, an insured may not recover punitive or extra-contractual damages where the insurer had a legitimate or arguable basis for its delay or denial of payment.

The question whether an insurer had an arguable basis for its denial or delay is an issue of law for the court. James v. State Farm Mut. Auto. Ins. Co., 743 F.3d 65, 70 (5th Cir. 2014). Where the insurer has articulated an arguable or legitimate reason for its denial or payment delay, that is, where it shows that it had reasonable justifications, either in fact or in law, for its actions, then the insured has the burden to demonstrate by a

preponderance of the evidence that the insurer had no arguable reason for its decision and/or actions. Id.; Wigginton, 964 F.2d at 492 (citation omitted). See also Stewart v. Gulf Guar. Life Ins. Co., 846 So. 2d 192, 200-01 (Miss. 2002) ("Arguably-based denials are generally defined as those which were rendered upon dealing with the disputed claim fairly and in good faith.") (quoting Andrew Jackson Life Ins. Co., 566 So. 2d at 1184).

Allstate's Legitimate or Arguable Reason

Williams alleges that as a result of the October 5, 2015 accident, he sustained a fracture of a cervical disc and damage to hardware (pedicle screws) that had been previously surgically implanted; that surgery was required to repair the damage; and that his medical expenses for these injuries were over $170,000. Allstate has articulated, and has offered supporting evidence, of a legitimate or arguable basis for its conclusions that the treatment Williams received from and after November 2016, including the spinal revision/fusion surgery he underwent in July 2017, did not relate to injuries he sustained in the October 2015 accident; that the only treatment Williams sought or received for injuries suffered in the October 2015 accident were his initial emergency department visit and the follow-up visit three weeks later, for which his total medical expenses were $10,300; and that the $27,000 he received in insurance payments from the tortfeasor and his medical payments coverage was adequate compensation for

the injuries he sustained in the subject accident. There is ample support for Allstate's conclusions in the medical evidence.

Records from the University of Mississippi Medical Center (UMMC) show that on the date of the subject accident, Williams was seen in UMMC's emergency department with complaints of neck and back pain. At that time, he reported having had spinal fusion surgery approximately one year earlier as the result of injuries he had sustained in a prior automobile accident. Williams reported that his lumbar pain "has been longstanding since his surgery...." The record recites: "[Patient] reports his cervical spine tenderness ... is more severe than normal[;] however he has always had [lumbar] spine tenderness even after surgery and this is unchanged." Imaging showed "some broken pedicle screws", but it was noted that it was "unclear if this is new or old."

Williams returned to UMMC for a follow-up visit three weeks later, on October 22, 2015. Repeat imaging showed the same "break of the screws in the lumbar S1 screw"; but it was again noted that "it is hard to correlate whether this is due to the injury or if this happened prior to [the injury]." Williams was advised to have a CT scan and also to obtain records from his surgeon for comparison, yet there is no indication that this occurred.

Williams did not seek further treatment at UMMC until more than a year later, in November 2016, when he presented for a "followup of back pain." At that time, he gave a history of

having had "numbness, tingling radiating down his bilateral lower extremities [following his 2012 lumbar surgery]. He state[d] overall this ha[d] not improved nor ha[d] it gotten worse." The treating physician reports he explained to Williams that his "lumbar and axial spine might be chronic and might be from his initial injury and his initial surgery." An MRI was ordered.

The MRI, which was done December 7, 2016, showed severe stenosis at L4-L5 and some mild stenosis at L4-5 and 5-6. The report contained no mention of the pedicle screws. A CT scan was ordered. The CT imaging showed that the hardware from the 2012 surgery was "in place with fracture of the S1 pedicle screws."[1] This was noted to be unchanged from the imaging done in October 2015. It further showed that the fusion from the 2012 surgery was complete on the left side but appeared to be only partially fused on the right. Williams' treating physician recommended that he have surgery for revision of the L5-S1 fusion with decompression and extension of the fusion mass and hardware from L4 to the

[1]     Williams and his family reported to medical personnel on his November 2016 visit that a CT scan had been done at UMMC which showed the screws from his earlier surgery had dislodged; they were reportedly "adamant that the screws need to be removed." However, UMMC records state it could find no record of any such scan. Moreover, the subsequent December 2018 CT scan showed the screws were in place but were broken.

pelvis, and in July 2017, Williams had surgery on his lumbar spine.[2]

It is clear from the foregoing that Allstate had reasonable grounds for concluding that the condition of Williams' lumbar spine (including the fractured screws) and his resulting symptoms pre-existed the subject accident and were due to the injuries he had received in the previous accident and the spinal surgery he had as a result of those prior injuries. Williams has not responded to the motion and has thus offered no evidence tending to undermine the reasonableness of Allstate's conclusion in this regard. See JSI Commc'ns v. Travelers Cas. & Sur. Co. of Am., 717 F. App'x 382, 386 n.20 (5th Cir. 2017) (citing Caldwell v. Alfa Ins. Co., 686 So. 2d 1092, 1097 n.1 (Miss. 1996)) (stating that at the summary judgment stage, where the insurer has made an adequate prima facie showing of a reasonably arguable basis for its decision, the plaintiff has the burden to come forward with proof that the insurer lacked a legitimate or arguable basis for the challenged decision).

The medical records do show that Williams sustained injury to his cervical spine in the October 2015 accident. However, Allstate had a reasonable basis for concluding that the only

_____

[2]     This surgery was originally scheduled for January 30, 2017, but was cancelled because plaintiff had been smoking. It was subsequently rescheduled. Plaintiff went for his pre-op exam on June 22, 2017 and, from billing records, it appears he had the surgery on July 7, 2017.

treatment Williams sought or received relating to that injury (and any other injury he may have suffered in the subject accident) were the two visits to UMMC in October 2015, for which his total medical expenses were $10,300. Allstate's further conclusion that $27,000 was adequate compensation for such injury/injuries was not unreasonable.

### Failure to Investigate

Williams appears to allege that Allstate is liable for punitive damages based on its failure to adequately investigate his claim. Insurers do have a duty under Mississippi law to conduct "a prompt and adequate investigation" of an insured's claim, Broussard, 523 F.3d at 627–28 (quoting Liberty Mut. Ins. Co. v. McKneely, 862 So. 2d 530, 535 (Miss. 2003)), which includes a duty to "make a reasonable effort to secure all medical records relevant to the claim," Stewart v. Gulf Guar. Life Ins. Co., 846 So. 2d 192, 204 (Miss. 2002). However, while "the denial of a claim without proper investigation may give rise to punitive damages," Stewart, 846 So. 2d 203-04, to recover such damages, the insured must prove a level of negligence in conducting the investigation "such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit," United Servs. Auto. Ass'n (USSA) v. Lisanby, 47 So. 3d 1172, 1178 (Miss. 2010) (internal quotation marks and citations omitted). Here, Williams has not alleged any facts or presented

any proof to show that a more thorough investigation would have revealed evidence that Allstate's conclusion regarding his claim was not arguably reasonable.

### Unreasonable Delay

Williams has also alleged – presumably in support of his demand for punitive damages – that Allstate "unreasonably delayed its investigation and the conclusion of [his] claim" by purporting to have lost Williams' file, some months after he had submitted his claim with supporting medical bills and records, and by asking Williams' counsel to resubmit those documents.  Williams has offered no evidence to substantiate this allegation.  For its part, Allstate acknowledges in its motion that approximately two months before it received Williams' claim and supporting documentation in November 2017, Williams' counsel contacted Allstate, claiming he had previously submitted a settlement demand with accompanying medical records.  Allstate's adjuster advised he had not received any such materials and asked that they be resubmitted.  Thus, Allstate was aware in or around September 2017 that Williams would be submitting a claim for UIM benefits; but the undisputed record evidence establishes that Allstate did not receive plaintiff's claim for UIM benefits until his counsel

submitted a November 7, 2017 settlement demand, accompanied by medical records from UMMC.[3]

Conclusion

Based on the foregoing, the court concludes that Allstate has demonstrated that it is entitled to summary judgment on Williams' claims for punitive and extra-contractual damages. Therefore, it is ordered that Allstate's motion for partial summary judgment on these claims is granted.

SO ORDERED this 25th day of March, 2019.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3] Williams does not appear to allege there was any unreasonable delay after he resubmitted his claim in November 2017. Any such charge is belied by record evidence which shows that Allstate promptly began reviewing plaintiff's claim documents but discovered that many of the records appeared to be missing. Allstate emailed Williams' counsel repeatedly from November 22, 2017 to January 31, 2018 to obtain the missing records, to no avail. Upon a more searching examination, Allstate discovered that many of the records plaintiff had submitted related to a different individual with the same name as plaintiff. After identifying the records that related to plaintiff, Allstate evaluated his claim for benefits. It completed its analysis by March and on April 5, 2018, communicated its conclusions to Williams' counsel. While there was some delay in this process, the facts do not support a finding of unreasonable delay attributable to Allstate.